1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BENJAMIN F. ELLIS,                         No.  2:23-cv-1962 WBS SCR P

12                 Plaintiff,

13         v.                                   ORDER

14   GABRIEL WILLIAMS, et al.,

15                 Defendants.

16

17         Plaintiff, a state prisoner proceeding pro se, filed this civil rights action under 42 U.S.C.

18   §1983.  Before the court are plaintiff's complaint for screening and plaintiff's motion to proceed

19   in forma pauperis.  For the reasons set forth below, this court grants plaintiff's motion to proceed

20   in forma pauperis, finds plaintiff states cognizable Eighth Amendment and negligence claims

21   against defendant Williams, and finds plaintiff states no other cognizable claims for relief.

22   Plaintiff will be given the choice of proceeding immediately on the claims found cognizable, and

23   dismissing the other claims and defendants, or amending the complaint.

24                              **IN FORMA PAUPERIS**

25         Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C.

26   §1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

27         Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

28   §§1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

                                          1

1  accordance with the provisions of 28 U.S.C. §1915(b)(1).  By separate order, the court will direct

2  the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

3  forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments

4  of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

5  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

6  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

7  §1915(b)(2).

8                                    **SCREENING**

9     **I.      Legal Standards**

10         The court is required to screen complaints brought by prisoners seeking relief against a

11  governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C.

12  §1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

13  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

14  granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

15  U.S.C. §1915A(b)(1) & (2).

16         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

17  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

18  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

19  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

20  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

21  pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.  Rule 8(a)(2) of

22  the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim

23  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

24  the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S.

25  544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

26         However, in order to survive dismissal for failure to state a claim, a complaint must

27  contain more than "a formulaic recitation of the elements of a cause of action;" it must contain

28  factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic,

1  550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

2  allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S.

3  738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all

4  doubts in the plaintiff's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).

5      Section 1983, enacted as part of the Civil Rights Act of 1871, requires that there be an

6  actual connection or link between the actions of the defendants and the deprivation alleged to

7  have been suffered by plaintiff.  <u>See Monell v. Dept. of Social Servs.</u>, 436 U.S. 658, 694 (1978);

8  <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71 (1976).  Plaintiff may demonstrate that connection by

9  alleging facts showing:  (1) a defendant's "personal involvement in the constitutional

10  deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly

11  refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should

12  have known would cause others to inflict a constitutional injury."  <u>Starr v. Baca</u>, 652 F.3d 1202,

13  1207-08 (9th Cir. 2011) (internal quotation marks and citations omitted).

14  **II.    Discussion**

15      **A.  Plaintiff's Allegations**

16      Plaintiff is incarcerated at the California Health Care Facility ("CHCF").  He complains of

17  conduct that occurred there in 2022 and 2023.  Plaintiff identifies three defendants:  (1) Gabriel

18  Williams, M.D.; (2) Medical Assistant Elenita Paez; and (3) Associate Warden/ADA Coordinator

19  Kim Petersen.

20      Plaintiff alleges the following:  He is paralyzed from the chest down as the result of a

21  gunshot wound in 1985.  He is classified as "high risk" medical.  He suffers pain due to, among

22  other things, arthritis in his shoulders, wrists, and neck, severe degenerative changes in his spine,

23  and nerve damage in his hands and wrists.  At all times during his incarceration, plaintiff has used

24  a specialized, nonformulary wheelchair.  In February 2022, he was using the custom, personal

25  wheelchair he had been using since 2003.  Because the wheelchair was providing inadequate

26  support and comfort, plaintiff's primary care provider ("PCP") referred him to defendant

27  Williams, a physiatrist, to be measured for a new wheelchair with an 18" width.  (ECF No. 1 at

28  11, 13.)

On April 27, 2022, when he had not been seen by defendant Williams, plaintiff submitted an Americans with Disabilities Act ("ADA") request form regarding the appointment.  Plaintiff was seen by Williams on May 17, 2022.  Williams gave plaintiff a form showing that the request for a new wheelchair had been approved.  In the response to his ADA request, defendant Petersen noted that plaintiff had been seen by Williams and confirmed that the request for a new wheelchair had been approved.  When plaintiff asked Williams for a loaner wheelchair similar to the custom chair he was then using, Williams told him to return in a few days to see defendant Paez about getting a loaner chair.  (ECF No. 1 at 12.)

When plaintiff saw Paez, she told him she could only give him a standard wheelchair. She referred plaintiff back to Williams about his need for a specialized loaner chair.  Plaintiff's PCP, Williams, and Paez were all aware that plaintiff's existing chair was dangerous for him and had caused him many falls.  On May 25, plaintiff's unit officer faxed a request to Williams inquiring about the loaner wheelchair, but plaintiff received no response.  (ECF No. 1 at 13.) Defendant Petersen failed to interview plaintiff or provide him with a loaner chair.  (Id. at 14.)

In August 2022, Williams referred plaintiff for a medical consult with an outside orthopedist regarding the lumbar support plaintiff requires in a wheelchair.  After seeing plaintiff, in September 2022 the orthopedist recommended plaintiff be provided a new, specialized wheelchair.  (ECF No. 1 at 14.)

At an October 16, 2022 appointment with Williams, plaintiff learned that the prison had not ordered the new wheelchair.  That same day, plaintiff submitted a healthcare grievance asking why the new wheelchair had not been ordered.  In December 2022,  plaintiff received an institutional-level response telling him that the prison was using a new vendor for wheelchairs and a new chair had been ordered.  (ECF No. 1 at 14.)

At a January 3, 2023 appointment with defendant Williams, Williams indicated his "dislike" that plaintiff had submitted a grievance about the wheelchair.  Williams then attempted to "force" plaintiff to accept a standard wheelchair.  On January 16, 2023, plaintiff was still using his old wheelchair and fell.  A duty nurse emailed defendants Williams and Paez after the fall, but plaintiff received no response.  (ECF No. 1 at 14-16.)

4

In April 2023, plaintiff received a Headquarters Level response to a grievance.  It stated that on January 3, 2023, Williams had provided plaintiff with a nonformulary, lightweight wheelchair but plaintiff refused it because it was bigger and, apparently, because it was not the brand "Quickie" that had been ordered.  Plaintiff claims Williams gave false information to staff who reviewed his grievance.  (ECF No. 1 at 16.)

At a July 5, 2023 appointment with Williams, Williams told plaintiff he would be fitted for a new wheelchair.  Again plaintiff requested, and was not given, a loaner wheelchair.  Plaintiff finally received a loaner in August 2023, but it was heavy and caused plaintiff pain in his upper extremities.  (ECF No. 17-18.)

On September 5, 2023, plaintiff saw a specialist to be fitted for a new wheelchair.  (ECF No. 1 at 17.)  Plaintiff initiated this action shortly thereafter.  Plaintiff seeks compensatory and punitive damages.

### B.  Plaintiff States Some Cognizable Claims for Relief

Plaintiff identifies his claims as retaliation by defendant Williams in violation of the First Amendment, deliberate indifference to his medical needs by all defendants in violation of the Eighth Amendment, violation of the ADA and the Rehabilitation Act ("RA"), and state law claims for negligence against all defendants and for intentional infliction of emotional distress against Williams.

### 1.  Retaliation

To state a claim for retaliation under the First Amendment, a prisoner must state facts showing the following five basic elements:  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

Plaintiff states that at the January 2023 appointment, Williams was upset about plaintiff's October 2023 grievance and Williams demonstrated a "dislike" for plaintiff.  Plaintiff contends that Williams' failure to respond to a subsequent fax and email from a nurse inquiring about the

wheelchair was retaliatory.  (ECF No. 1 at 20.)  However, except for the timing, plaintiff alleges no facts demonstrating a connection between Williams' failure to respond and plaintiff's exercise of his First Amendment right to submit a grievance.  Nor does plaintiff allege facts showing that any delay on Williams' part was motivated by retaliation—to the contrary, the allegations show that the process of obtaining a new wheelchair had already been delayed up to eight months even before the grievance was filed.  Williams may have disliked plaintiff but that does not mean his actions were necessarily retaliatory.  Plaintiff's allegations are insufficient to state a claim for retaliation.

### 2.  Eighth Amendment Medical Claim

#### a.  Legal Standards

To state a claim that a defendant violated plaintiff's Eighth Amendment rights regarding his medical care, plaintiff must allege facts showing the following.  First, plaintiff must show that he has a serious medical need.  A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (internal citation omitted), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If plaintiff alleges sufficient facts to show the existence of a serious medical need, he must then allege facts showing that prison officials responded to the serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,'

6

'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 76, 105-06 (1997)); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

### b.  Defendant Williams

Plaintiff sufficiently alleges that he has a serious medical need.  To state an Eighth Amendment claim against defendant Williams, plaintiff must allege facts showing Williams acted, or failed to act, with deliberate indifference to plaintiff's medical need.

Plaintiff alleges he saw defendant Williams for the first time in May 2022 to be measured for a new wheelchair.  Williams was aware that plaintiff's existing wheelchair was dangerous and plaintiff had fallen when using it.  Plaintiff alleges that despite this knowledge, Williams did not provide plaintiff with a new wheelchair or with an appropriate loaner wheelchair despite seeing plaintiff several times after the first appointment.  Plaintiff was not provided a specialized loaner wheelchair until August 2023, well over a year after his first appointment with defendant Williams.  This court finds plaintiff's allegations against Williams minimally sufficient to state a claim that Williams was deliberately indifferent to plaintiff's need for a new wheelchair.

### c.  Defendant Paez

Plaintiff alleges Paez failed to provide him with a loaner wheelchair despite knowing that plaintiff's wheelchair was dangerous.  According to plaintiff, Paez told plaintiff she only had standard wheelchairs to provide as loaners and referred him back to Williams.  Plaintiff also alleges Paez did not respond to a fax and an email inquiring about the new wheelchair.

Plaintiff fails to allege facts sufficient to demonstrate that Paez had the ability to provide plaintiff with a specialized loaner wheelchair or had an obligation to do anything besides refer plaintiff back to defendant Williams.  Plaintiff does not show Paez acted with deliberate

////

7

indifference when she referred plaintiff to Williams.  Plaintiff fails to state a cognizable Eighth Amendment claim against Paez.

### d.   Defendant Petersen

Plaintiff alleges only that Petersen is responsible for the ADA program and inmates at CHCF and that she was aware plaintiff needed a new wheelchair in May 2022 when she responded to plaintiff's ADA request.  Supervisory personnel are generally not liable under §1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the plaintiff must show "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 652 F.3d at 1207 (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989)).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff fails to show Petersen had personal involvement in the delays in obtaining a new wheelchair.  Nor does plaintiff show Petersen even knew about the delays in ordering a wheelchair and providing plaintiff an appropriate loaner wheelchair.  Plaintiff's allegations against Petersen are not sufficient to show Petersen was deliberately indifferent to plaintiff's need for a new wheelchair.

### 3.   Violations of the ADA and Rehabilitation Act

#### a.   Legal Standards

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Title II authorizes suits by private citizens for money damages against public entities, United States v. Georgia, 546 U.S. 151, 153 (2006), and state prisons "fall squarely within the statutory definition of 'public entity,'" Pennsylvania Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997).  The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. Georgia, 546 U.S. at 153.

8

"A disability discrimination claim may be based on 'one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" Payan v. Los Angeles Community College District, 11 F.4th 729, 738 (quoting Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016)). In contrast to a Title II disparate impact claim, which "is focused on modifying a policy or practice to improve systemic accessibility," a Title II "reasonable accommodation claim is focused on an accommodation based on an individualized request or need[.]" Id.

"Generally, public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)). The state is responsible for providing inmates with "the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication," and as such, the ADA requires that these "opportunities" be provided to disabled inmates "to the same extent that they are provided to all other detainees and prisoners." Armstrong v. Schwarzenegger, 622 F.3d 1058, 1068 (9th Cir. 2010); see also Pierce, 526 F.3d at 1220 (finding ADA violation where defendant failed to articulate "any legitimate rationale for maintaining inaccessible bathrooms, sinks, showers, and other fixtures in the housing areas and commons spaces assigned to mobility- and dexterity-impaired detainees").

To state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services,

////

9

1  programs, or activities' 'solely by reason of' his or her disability, that individual may have an
2  ADA claim against the public entity.").

3      Furthermore, "[t]o recover monetary damages under Title II of the ADA ... a plaintiff
4  must prove intentional discrimination on the part of the defendant."  Duvall v. County of Kitsap,
5  260 F.3d 1124, 1138 (9th Cir. 2001).  The standard for intentional discrimination is deliberate
6  indifference, "which requires both knowledge that a harm to a federally protected right is
7  substantially likely, and a failure to act upon that likelihood."  Id. at 1139.  The ADA plaintiff
8  must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to
9  provide" and show that the defendant's failure to act was "a result of conduct that is more than
10  negligent, and involves an element of deliberateness." Id. at 1140.

11      To establish a violation of section 504 of the Rehabilitation Act ("RA"), a plaintiff must
12  show "(1) she is handicapped within the meaning of the [RA]; (2) she is otherwise qualified for
13  the benefit or services sought; (3) she was denied the benefit or services solely by reason of her
14  handicap; and (4) the program providing the benefit or services receives federal financial
15  assistance."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  The elements of claims
16  under the ADA and the RA are functionally the same.  See Gohl v. Livonia Pub. Sch., 134 F.
17  Supp. 3d 1066, 1074 (E.D. Mich. 2015), aff'd sub nom. Gohl v. Livonia Pub. Sch. Sch. Dist., 836
18  F.3d 672 (6th Cir. 2016) ("claims brought under Title II of the ADA and § 504 of the RA require
19  proof of substantially similar elements"); Atcherley v. Hanna, No. 2:13-cv-0576 AC P, 2014 WL
20  2918852, at *7 (E.D. Cal. June 26, 2014).

21          **b.  Does Plaintiff State Claims under the ADA and RA?**

22      Plaintiff states that as a result of defendants' failure to provide him with a new wheelchair,
23  he was denied "full access to prison services:  program groups, religious services, missed several
24  days of school/education."  Plaintiff's allegations are too conclusory and general to state a claim.
25  Plaintiff must describe in more detail how the lack of a new wheelchair caused him to be unable
26  to fully access those services.  Additionally, Plaintiff fails to allege facts showing that programs at
27  CHCF are federally funded, as would be necessary for a cause of action under the RA.  Plaintiff's
28  ADA and RA claims will be dismissed with leave to amend.

1

#### 4.  State Law Claims

2

##### a.  Negligence

3       A public employee is liable for injury to a prisoner "proximately caused by his negligent

4   or wrongful act or omission." Cal. Gov't Code §844.6(d).  "Under California law, '[t]he elements

5   of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the

6   protection of others against unreasonable risks (duty); (2) failure to conform to that standard

7   (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting

8   injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554,

9   572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)).  To establish a

10  claim for medical negligence in California, plaintiffs must prove all of the following elements by

11  a preponderance of the evidence:  "'(1) the duty of the professional to use such skill, prudence,

12  and diligence as other members of his profession commonly possess and exercise; (2) a breach of

13  that duty; (3) a proximate causal connection between the negligent conduct and the resulting

14  injury; and (4) actual loss or damage resulting from the professional's negligence.'" Veasley v.

15  United States, 201 F. Supp. 3d 1190, 1200 (S.D. Cal. 2016) (quoting Hanson v. Grode, 76 Cal.

16  App. 4th 601 (1999)).

17      Plaintiff adequately states a claim that defendant Williams had a duty to protect him

18  against the risks caused by a dangerous wheelchair and that Williams' failure to obtain an

19  appropriate wheelchair for plaintiff caused plaintiff to be injured in falls.  However, plaintiff fails

20  to state a claim that Paez had a duty to provide plaintiff with an appropriate wheelchair, given the

21  minimal facts pleaded about Paez's role in plaintiff's care, or that defendant Petersen was aware

22  of the delays in providing plaintiff with a new wheelchair.

23

##### b.  Intentional Infliction of Emotional Distress

24      "In order to establish a claim for intentional infliction of emotional distress under

25  California law, [plaintiff must] show (1) that the defendant's conduct was outrageous, (2) that the

26  defendant intended to cause or recklessly disregarded the probability of causing emotional

27  distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately

28  caused by defendant's conduct." Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (internal

11

1    citation omitted).  A defendant's conduct is considered to be outrageous if it is "so extreme as to

2    exceed all bounds of that usually tolerated in a civilized community."  Hughes v. Pair, 46 Cal. 4th

3    1035, 1050-51(1993) (internal quotation marks and citations omitted).  Liability for intentional

4    infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances,

5    petty oppressions, or other trivialities."  Id. at 1051 (internal quotations marks and citations

6    omitted).  While showing "malicious or evil purpose is not essential to liability" for intentional

7    infliction of emotional distress, Crouch v. Trinity Christian Ctr. of Santa Ana, Inc., 39 Cal. App.

8    5th 995, 1007 (2019) (internal quotation marks and citations omitted), a plaintiff must plead facts

9    that demonstrate the defendant intended to cause, or was recklessly indifferent to causing,

10    plaintiff "'emotional distress of such substantial quality or enduring quality that no reasonable

11    [person] in civilized society should be expected to endure it,'"  The Kind & Compassionate v.

12    City of Long Beach, 2 Cal. App. 5th 116, 130 (2016) (quoting Hughes, 46 Cal. 4th at 1051; some

13    internal quotation marks omitted).

14        Plaintiff here alleges facts showing defendant Williams may have been deliberately

15    indifferent to his physical distress, but plaintiff fails to show Williams' conduct rises to the level

16    of outrageousness or that Williams intended to cause, or was reckless in causing, plaintiff severe

17    emotional suffering.  Nor does plaintiff show he did, in fact, suffer severe emotional distress.

18    Plaintiff's conclusory allegations that he did suffer such distress do nothing more than restate the

19    legal standard.  Plaintiff's allegations do not support a claim of intentional infliction of emotional

20    distress against Williams.  For the reasons set forth above, plaintiff fails to allege facts showing

21    that defendants Paez or Petersen intentionally or recklessly caused him severe emotional distress.

22    While the court finds it unlikely plaintiff will be able to state such claims, plaintiff will be given

23    the opportunity to amend the complaint to attempt to do so.

24                                    **CONCLUSION**

25        This court finds above that plaintiff states potentially cognizable claims against defendant

26    Williams for deliberate indifference to his serious medical needs under the Eighth Amendment

27    and for negligence.  This court further finds that plaintiff fails to state any other cognizable claims

28    for relief.  Plaintiff will be given a choice.  He may choose to proceed immediately on his Eighth

1   Amendment and negligence claims against defendant Williams and dismiss his other claims or he

2   may choose to file an amended complaint.

3       If plaintiff chooses to file an amended complaint, plaintiff must address the problems with

4   his complaint that are explained above.  Plaintiff is advised that in an amended complaint he must

5   clearly identify each defendant and the action that defendant took that violated his legal rights.

6   The court is not required to review exhibits to determine what plaintiff's allegations are as to each

7   named defendant.  If plaintiff wishes to add a claim, he must include it in the body of the

8   complaint.  The allegations must be set forth in the amended complaint so defendants have fair

9   notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every detailed

10  fact in support of his claims.  Rather, plaintiff should provide a short, plain statement of each

11  claim.  See Fed. R. Civ. P. 8(a).

12      Any amended complaint must show the federal court has jurisdiction, the action is brought

13  in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must

14  contain a request for particular relief.  Plaintiff must identify as a defendant only persons who

15  personally participated in a substantial way in depriving plaintiff of a federal constitutional right.

16  Starr, 652 F.3d at 1207-08 (a person deprives another of a constitutional right if that person was

17  personally involved in the deprivation, set in motion acts by others that resulted in the

18  deprivation, or refused to terminate acts by others that resulted in the deprivation).  "Vague and

19  conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v.

20  Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

21      In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed.

22  R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed.

23  R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or

24  occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

25      The Federal Rules of Civil Procedure contemplate brevity.  Plaintiff's claims must be set

26  forth in short and plain terms, simply, concisely, and directly.  See Swierkiewicz v. Sorema N.A.,

27  534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which

28  was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.  However, "a

1   complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on

2   its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Twombly, 550 U.S. at 570).  A claim is

3   plausible when the plaintiff includes facts "that allow[] the court to draw the reasonable inference

4   that the defendant is liable for the misconduct alleged."  Id.

5        An amended complaint must be complete in itself without reference to any prior pleading.

6   E.D. Cal. R. 220.  Once plaintiff files an amended complaint, the original pleading is superseded.

7        By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and

8   has evidentiary support for his allegations, and for violation of this rule the court may impose

9   sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

10       For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as

11   follows:

12       1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

13       2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

14   is assessed an initial partial filing fee in accordance with the provisions of 28U.S.C. §1915(b)(1).

15   All fees shall be collected and paid in accordance with this court's order to the Director of the

16   California Department of Corrections and Rehabilitation filed concurrently herewith.

17       3.  Plaintiff has stated potentially cognizable Eighth Amendment and negligence claims

18   against defendant Williams.

19       4.  Plaintiff's other claims are dismissed with leave to amend.

20       5.  Plaintiff may choose to proceed on his cognizable claims set out above or he may

21   choose to amend his complaint.  If plaintiff chooses to proceed on his cognizable claims in the

22   complaint, he shall voluntarily dismiss his other claims and defendants.

23       6.  Within thirty days of the date of this order, plaintiff shall fill out and return the

24   attached form indicating how he would like to proceed in this action.

25   ////

26   ////

27   ////

28   ////

14

7.  Plaintiff is warned that his failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: September 16, 2024

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BENJAMIN F. ELLIS,                             No.  2:23-cv-1962 WBS SCR P

12                    Plaintiff,

13        v.                                        PLAINTIFF'S NOTICE ON HOW TO
                                                    PROCEED
14   GABRIEL WILLIAMS, et al.,

15                    Defendants.

16

17   Check one:

18   _____   Plaintiff wants to proceed immediately on his Eighth Amendment and negligence claims

19           against defendant Williams.  Plaintiff understands that by going forward without

20           amending the complaint he is voluntarily dismissing all other claims and defendants.

21

22   _____   Plaintiff wants to amend the complaint.

23

24   DATED:_____

25

26

27                                    _____
                                      Benjamin F. Ellis, Plaintiff
28

                                              1