1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN F. ELLIS, | No. 2:23-cv-1962 WBS SCR P |
| Plaintiff, | |
| v. | ORDER AND |
| GABRIEL WILLIAMS, et al., | FINDINGS & RECOMMENDATIONS |
| Defendants. | |

Plaintiff is a state prisoner at the California Health Care Facility ("CHCF") who proceeds pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. On July 18, 2025, plaintiff filed an ex parte "request for injunction relief" (ECF No. 29), which the undersigned construes as a motion for preliminary injunction, seeking return to a cell that accommodates his full-time wheelchair use.[1]  The undersigned set an expedited briefing schedule and, after receiving a brief extension, defendants filed an opposition on July 30, 2025. (ECF No. 34.) Having considered the parties' filings, the undersigned recommends that plaintiff's PI motion be granted in part.

////

---

[1] Plaintiff has also filed a motion for sanctions on grounds defendants failed to file a responsive pleading within the time set by the court in its order dated June 17, 2025. (ECF No. 27.)  As defendants did in fact timely answer the FAC (see ECF No. 26), plaintiff's motion is denied.

1

# BACKGROUND

Plaintiff, an individual with T-4 Spastic Paraplegia and full-time wheelchair user, filed the operative first amended complaint ("FAC") on November 8, 2024, alleging, inter alia, that prison officials unlawfully refuse to provide a safe wheelchair. (ECF No. 12.) On December 11, 2024, the undersigned screened the FAC under 28 U.S.C. § 1915A and determined it stated cognizable Eighth Amendment, disability discrimination, and supplemental state claims against defendant Peterson, as well as cognizable First Amendment retaliation and supplemental state claims against defendant Williams. (ECF No. 13.) Plaintiff was given the option of proceeding on his cognizable claims or amending his complaint. (Id. at 8.) Plaintiff opted to proceed on the FAC as screened. (ECF No. 14.) Defendants Peterson and Williams subsequently answered (ECF No. 26), and the action is currently in the discovery phase (see ECF No. 28).

## PLAINTIFF'S EX PARTE MOTION

### I.    Plaintiff's Claims and Evidence

Plaintiff alleges that a Lt. Lucca told him on July 11, 2025, that he was moving to a new housing unit, D3A, Cell 107.[2] (ECF No. 29 at 2.) Plaintiff was housed in that unit before and informed Lt. Lucca that Cell 107 does not accommodate full-time wheelchair users like himself. Lt. Lucca replied, "You're going into that cell or be physically moved." (Id.) As Lt. Lucca escorted plaintiff to the new unit, plaintiff again explained that the cell cannot accommodate full-time wheelchair users. Lt. Lucca replied, "So, you're going into that cell!" Plaintiff complied and entered the cell. (Id.)

Plaintiff's medical status is "DPW," meaning he is a full-time wheelchair user. (ECF No. 29 at 3.) Unit D3A, Cell 107, is a "DPO" cell, meaning it is designated for intermittent wheelchair users, whom plaintiff defines as those "who do not require a wheelchair full time but are medically prescribed a wheelchair for use outside the cell." (Id.) Plaintiff alleges that because of the structure and features of the cell, he is denied full access to the toilet (i.e., because it lacks extended handrails "to support his body balance while sitting") and is forced to lay on his bed to

---

[2] Because plaintiff's motion is verified (see ECF No. 29 at 4-5) and based on his personal knowledge, the court accepts it as a supporting affidavit. See Fed. R. Civ. P. 65(b)(1)(A).

2

1  defecate. (Id. at 3-4.) Plaintiff lacks full access to the sink and counter (he cannot wheel under
2  the sink for "bathing, grooming and safety") and the mirror and coat hanger are too high for him
3  to reach. (Id. at 3.) The inaccessibility of the cell exacerbates the injuries plaintiff sustained from
4  operating his "broken and dangerous wheelchair." (Id.)
5  Plaintiff alleges his housing transfer amounts to unlawful discrimination under Title II of
6  the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"), by CDCR/CHCF.
7  (ECF No. 29 at 2-3.) He asserts he will be irreparably injured unless the court issues an order (1)
8  returning him back to a DPW cell, so that he can receive appropriate ADA accommodations; and
9  (2) prohibit CHCF staff from retaliating against him. (Id. at 4.)

**II.     Defendants' Opposition**

Defendants filed an opposition on July 30, 2025, after receiving a brief extension of time. (ECF Nos. 34.) Defendants argue that the Court lacks jurisdiction over CDCR and Lt. Lucca, the public entity and individual, respectively, identified in plaintiff's motion, because they are not defendants in this action. As such, the court cannot grant plaintiff's requested relief. (ECF No. 33 at 2 (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).) Further, defendants argue that plaintiff's request to be moved to a different cell is unrelated to the underlying action in which plaintiff alleges that he requires a specialized wheelchair but was denied one. (Id.) Finally, defendants assert plaintiff's motion is an attempt to circumvent the grievance process, and that the proper avenue is for plaintiff to file a new lawsuit after exhausting administrative remedies. (Id. at 2-3.)

Defendants offer the declaration of CHCF Litigation Coordinator E. Campos to refute the substance of plaintiff's ADA claims. First, Campos explains that Unit 4 in CHCF's D-Yard is being converted into assisted living units and all incarcerated persons, including Plaintiff, were moved as a result. (Declaration of E. Campos ("Campos Decl.") ¶ 6, ECF No. 34-1 at 2.) Therefore, plaintiff's move was logistical, not retaliatory. (ECF No. 34 at 3.)

Second, Campos maintains that while plaintiff's new cell is a DPO cell, it is still wheelchair accessible and compliant with the Armstrong remedial plan. (Campos Decl. ¶¶ 5, 7, ECF No. 34-1 at 2.) Campos provides the following facts to support the DPO cell's accessibility:

- "A DPO cell is slightly smaller than a DPW cell, with its dimensions being 9'6" x 12'6". The dimensions of a DPW cell are 9' x 15'6". However, there is still enough space within the cell for Ellis to move around freely in his wheelchair." (Id., ¶ 8.)
- "[B]oth the DPO and DPW cells have grab bars for the incarcerated person to transfer from their wheelchair to the toilet, medical beds with railings, and the incarcerated person has access to an ADA accessible shower on the unit." (Id., ¶ 9.)
- "While the sink and mirror in the DPO cell are not the same as those in the DPW cell, the only concern Ellis has expressed to custody staff is in regard to the use of the toilet in his cell. Specifically [ADA Coordinator] Pulido stated that Ellis had concerns about not being able to use the toilet in his cell. However, Ellis has a commode chair in his cell to accommodate this need. This chair is placed over the toilet in Ellis' cell and is used to provide him with extra support while he uses the toilet. It has been observed to be working properly." (Id., ¶¶ 10-11.)
- "On July 25, 2025, [Campos] spoke with Certified Nurse Assistant (CNA) Musa, who is assigned to Ellis's unit. CNA Musa stated that daily Ellis can dress and get into his wheelchair on his own. CNA Musa also stated that Ellis also generally declines assistance with his activities of daily living and instead only utilizes assistance when taking a shower. Ellis requires two-person assistance when using the shower lift to take a shower. This assistance is always provided to him." (Id., ¶¶ 12, 13.)
- "If Ellis has any other issues, nurses are available 24/7 to provide assistance. Ellis is housed in a unit where inmates receive continuous disability assistance from skilled nursing staff as an accommodation." (Id., ¶ 14.)

In sum, because plaintiff's current cell is wheelchair accessible and he receives assistance for his needs, defendants maintain he cannot show a likelihood of success on the merits of his claim. (ECF No. 34 at 4.)

## LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that may only be granted if the moving party satisfies one of two legal standards. A plaintiff seeking a preliminary injunction

4

1  must generally establish all four of the following elements: (1) likely success on the merits of his
2  underlying case; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3)
3  the balance of equities tips in his favor; and (4) an injunction is in the public interest.  Garcia v.
4  Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015).  A plaintiff may also be entitled to a preliminary
5  injunction by showing serious questions going to the merits, irreparable harm, and a balance of
6  equities that tips strongly in the plaintiff's favor.  All. For the Wild Rockies v. Cottrell, 632 F.3d
7  1127, 1134-35 (9th Cir. 2011).

## DISCUSSION

### I.  Jurisdictional Challenges

#### A. Personal Jurisdiction

Defendants first argue that the court lacks personal jurisdiction over CDCR and Lt. Lucca because they are not defendants in the action.  While plaintiff discusses Lt. Lucca in his motion, he identifies CDCR as the covered public entity under Title II.  (See ECF No. 29 at 3.)  The undersigned therefore construes plaintiff's motion as seeking an injunction against CDCR only.

Generally, an injunction under Rule 65 binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation."  Fed. R. Civ. P. 65(d)(2)(A)–(C); Zenith Radio Corp., 395 U.S. at 112.  In this action, plaintiff is pursuing Title II claims against defendants Williams and Peterson, a state correctional health provider and Associate Warden/ADA Coordinator, respectively, in their official capacities.  (See Screening Order, ECF No. 13 at 5-6.)  State officers sued in their official capacity represent the "public entity" for purposes of Title II.  Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187 (9th Cir. 2003).  Thus, an order granting injunctive relief against CDCR would have the same practical effect as an order granting injunctive relief against Williams and Peterson.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quotation omitted).  Accordingly, personal jurisdiction is not a barrier to plaintiff's requested relief.

////

5

**B. Unrelated Claims**

Defendants next argue that plaintiff's request to be moved to a DPW cell should be denied because it is unrelated to the claims underlying his FAC. A plaintiff must "establish a relationship between the injury claimed" in the motion for injunctive relief and "the conduct asserted in the complaint." Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 636 (9th Cir. 2015).

> This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant "relief of the same character as that which may be granted finally." Absent that relationship or nexus, the district court lacks authority to grant the relief requested.

Id. at 636 (internal citation omitted). "'[N]ew assertions' of misconduct do not support injunctions 'entirely unrelated to the conduct asserted in the underlying complaint'—there must be a 'sufficient nexus' between the new allegations and the complaint." Armstrong v. Newsom, 58 F.4th 1283, 1292 (9th Cir. 2023) (quoting Pac. Radiation Oncology, 810 F.3d at 636).

In Pinson v. Fed. Bureau of Prisons, No. CV-22-0298 TUC RM, 2024 WL 579080 (D. Ariz. Feb. 13, 2024), voluntarily dismissed, No. 24-1917, 2024 WL 4457463 (9th Cir. July 5, 2024), the plaintiff, a transgender federal prisoner, sought a preliminary injunction to allow only female officers to strip search her and view her on suicide watch. Id. at *10. Defendants countered that there was not a sufficient nexus between the plaintiff's requested injunctive relief and the claims in the complaint. Id. Upon reconsideration of its prior order finding a sufficient nexus lacking, the district court concluded plaintiff's request was "sufficiently related" to her underlying Eighth Amendment claim "arising from mental health treatment, or the lack thereof, related to her transgender status and gender dysphoria, and the accompanying difficulties that result from Defendant's alleged failure to adequately treat her, protect her from harm, and properly house her."[3] Id.

---

[3] The court, however, found that plaintiff's request to enforce anti-retaliation law lacked a sufficient nexus to the complaint. Pinson, 2024 WL 579080, at *15 (citing Pac. Radiation Oncology, 810 F.3d at 633). It directed plaintiff to move for leave to amend or supplement the complaint if she seeks to add a retaliation claim for injunctive relief. Id.

1    Here, as in Pinson, the new allegations raised in plaintiff's motion are "sufficiently
2    related" to his underlying claim.  The crux of plaintiff's Title II claim in the FAC is that
3    defendants, by denying him a safe wheelchair, failed to provide "ADA Complant [sic] and Safe
4    Facilities" over a period of years.  (ECF No. 12 at 21-22.)  In the FAC, plaintiff specifically
5    identified defendant Petersen, then the ADA Coordinator, as responsible for "implementing
6    policies and procedures involving the ADA," including the Armstrong remedial plan (id. at 11, ¶
7    9), which defendants now cite to justify plaintiff's placement in a DPO cell.  (See Campos Decl.,
8    ¶ 5.)  Plaintiff's FAC further alleges that defendant Williams retaliated against him "because of
9    his requests for reasonable accommodations and for filing grievances and lawsuit[s]" in violation
10   of the ADA.  (ECF No. 12 at 23, ¶ 67.)  Accordingly, because a sufficient nexus exists between
11   plaintiff's motion and his FAC, the undersigned will entertain the motion.

   **II.    Likelihood of Success on the Merits**

   **A.  Legal Standard**

   Title II of the ADA provides that individuals with disabilities cannot be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," nor may they be "subjected to discrimination by any such entity."  42 U.S.C. § 12132. Title II's protections extend to incarcerated persons with disabilities in state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997).

   A plaintiff must satisfy four elements to prevail on a Title II claim under the ADA:

   > (1) [H]e is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

   O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007).  Regarding the third factor, public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the

service, program, or activity." Pierce v. Cnty. of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (citing 28 C.F.R. § 35.130(b)(7) and McGary v. City of Portland, 386 F.3d 1259, 1265–67 (9th Cir. 2004)). The ADA further requires prisons to ensure incarcerated persons with disabilities are not denied benefits "because a facility is inaccessible to or unusable" by them, and to "implement reasonable policies … so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." Hernandez v. Cnty. of Monterey, 110 F. Supp. 3d 929, 935 (N.D. Cal. 2015) (citing 28 C.F.R. § 35.152(b)(3)).

As relevant here, Title II also contains anti-retaliation provisions that provide:

(a) No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203; see also 34 C.F.R. § 35.134.

**B. Denial of Benefits/Discrimination**

There is no dispute that plaintiff is a person with a disability under the ADA. Nor can it be disputed that toileting access constitutes a "program or service." See Pierce, 526 F.3d at 1220 (ADA challenge to accessibility of toilets, shower, and other prison conditions). As to whether plaintiff was either denied benefits because of his disability or otherwise been discriminated against because of his disability, at a minimum his evidence raises serious questions on the merits of his claims regarding the toileting and grooming difficulties he faces in his DPO cell.

Plaintiff's toileting complaint hinges on the alleged absence of "extended handrails" to support his balance while sitting and that have forced him to defecate on his bed. (ECF No. 29 at 3.) Defendants counter that there is a "commode chair" placed over his toilet that "has been observed to be working properly." (Campos Decl., ¶ 11.) But for a modification like this to be "reasonable," it "must give disabled prisoners 'meaningful access' to the service, program, or activity in question." Clark v. California, 739 F. Supp. 2d 1168, 1177 (N.D. Cal. 2010) (citing

Alexander v. Choate, 469 U.S. 287, 301 (1985)).  Defendants' declaration does not specifically state that Plaintiff can now use the toilet.  Nor does defendants' declaration explain who observed the commode chair "working properly," what it means for such chair to be "working properly," or how its proper working equates to plaintiff's meaningful access.  While defendants state that both DPO and DPW cells have "grab bars" near the toilet (Campos Decl., ¶ 11), they do not state that the DPO cell in which Plaintiff is now housed has the "extended handrails" that he reportedly needs in order to access the toilet.

Similarly, defendants do not dispute plaintiff's complaints regarding the lack of sink and counter access and resultant barriers to grooming.  They admit the sink is "not the same as those in a DPW cell" but state only that plaintiff has not complained about it to staff.  (Campos Decl., ¶ 10.)  Accordingly, plaintiff has raised serious questions as to the merits of his claims.

### C. Retaliation

To establish a prima facie claim of retaliation under Title II, plaintiff must show that:

> (1) he engaged in a protected activity; (2) the public entity knew he was involved in a protected activity; (3) an adverse action was taken against him; and (4) a causal connection exists between the protected activity and the adverse action.

Pardi v. Kaiser Foundation Hosp., 389 F.3d 840, 849 (9th Cir. 2004); Lee v. Natomas Unified Sch. Dist., 93 F. Supp. 3d 1160, 1167 (E.D. Cal. 2015).  If Plaintiff can establish a prima facie case, the burden shifts to the public entity to show a legitimate, non-retaliatory purpose for its actions.  Pardi, 389 F.3d at 849.  If the public entity can show such a purpose, the burden shifts back to plaintiff to demonstrate that the proffered reason is pretextual.  Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

Plaintiff has not established a likelihood of success on the merits of his retaliation claim.  His evidence does not establish a nonspeculative, causal connection between his protected ADA lawsuit and adverse housing transfer.  Nor can the court infer a causal connection from timing alone where the transfer occurred some five months after defendants first appeared in the action.  See Pardi, 389 F.3d at 850 (adverse actions must "closely follow complaints of discrimination"); Alex G. ex rel. Dr. Steven G. v. Bd. of Trs. of Davis Joint Unified Sch. Dist., 387 F. Supp. 2d 1119, 1129 (E.D. Cal. 2005) (a one-month period is sufficiently close to create an inference of a

causal connection). Even if plaintiff had established a prima facie case, he fails to present any evidence rebutting or overcoming defendants' legitimate, "logistic" explanation for his transfer. (See Campos Decl., ¶ 6.)

### III. Irreparable Harm

Plaintiff is likely to suffer irreparable harm from the alleged toileting barriers absent preliminary injunctive relief. Injuries to one's independence and personal dignity because of violations of civil rights constitute irreparable harms. See Guerra v. W. Los Angeles Coll., 742 F. Supp. 3d 1083, 1096 (C.D. Cal. 2024) (students with mobility impairments suffered irreparable harm from termination of campus shuttle); Cupolo v. Bay Area Rapid Transit, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997) ("Injuries to individual dignity and deprivations of civil rights constitute irreparable injury.") (citing Sullivan v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 961 (E.D. Cal. 1990) (injury to ability to function as independent person constitutes irreparable injury)). So too do physical access barriers in the context of jails and prisons. See Hernandez, 110 F. Supp. 3d at 956 (incarcerated plaintiffs with disabilities "continue to suffer irreparable harm through access exclusion").

### IV. Balances of Equities and Public Interest

When the government is a party, the final two factors, balances of equities and the public interest, merge. Nikn v. Holder, 556 U.S. 418, 435 (2009)). Defendants have not addressed these two prongs of the preliminary injunction analysis, instead focusing on the merits of plaintiff's ADA claims. The undersigned finds that the balance of equities tip sharply in plaintiff's favor. Plaintiff's injuries implicate his independence and personal dignity, and the individual accommodations sought do not require defendants to implement systemic changes. Further, the public interest is served by requiring entities to comply with the ADA. Enyart v. Nat'l Conf. of Bar Examiners, Inc., 630 F.3d 1153, 1167 (9th Cir. 2011); see also Tennessee v. Lane, 541 U.S. 509, 525 (2004) (Congress enacted ADA to address "pattern of unequal treatment in the administration of a wide range of public services, programs, and activities, including the penal system").

Accordingly, because plaintiff has shown serious questions going to the merits of his Title


II claims regarding toileting and grooming access, irreparable harm, and a balance of equities that tips strongly in the plaintiff's favor, the undersigned recommends that plaintiff's preliminary injunction motion be granted only as to his request for appropriate ADA accommodations. As discussed above, plaintiff has not made the required showing regarding his ADA retaliation allegations.

### V.     Scope of Injunction

The type of prospective relief that may be awarded is governed by the Prison Litigation Reform Act ("PLRA"). "The PLRA states that any prospective relief relating to prison conditions must be narrowly drawn, go no further than necessary, and be the least intrusive remedy." Ahlman v. Barnes, 20 F.4th 489, 493 (9th Cir. 2021) (citing 18 U.S.C. § 3626(a)(1)(A)). "Under the PLRA, injunctive relief must heel close to the identified violation." Armstrong v. Brown, 768 F.3d 975, 983 (9th Cir. 2014) (citation and internal quotation marks omitted). The court may "provide guidance and set clear objectives, but it may not attempt to micromanage prison administration, or order relief that would require for its enforcement the continuous supervision by the federal court over the conduct of state officers." Id. (citation and internal quotation marks omitted).

Considering the nature of plaintiff's alleged injuries, absent some individualized accommodation, it is not possible to craft relief that is narrower than restoring the status quo of an accessible cell. Therefore, the undersigned recommends that defendants be ordered to return plaintiff to a DPW cell or equivalent that will provide plaintiff with meaningful access to toileting and grooming facilities, or implement some other individualized accommodation (such as an on-call attendant) to ensure that plaintiff can use the toilet or grooming facilities to the same extent as if he were in a DPW cell or equivalent.

Should the district judge adopt these findings and recommendations, defendant should also report to the court what steps they have taken to implement any preliminary injunction order within 48 hours. Any party could also file with the court a request to modify or terminate the recommended injunctive relief upon a showing that such relief is no longer necessary. See 18 U.S.C. § 3626(e).

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for sanctions (ECF No. 27) is DENIED.

In addition, IT IS HEREBY RECOMMENDED that plaintiff's preliminary injunction motion (ECF No. 29) be GRANTED IN PART and that defendants be ordered to return plaintiff to a DPO cell or equivalent that will provide plaintiff with meaningful access to toileting and grooming facilities, or implement some other individualized accommodation (such as an on-call attendant) to ensure that plaintiff can use the toilet or grooming facilities to the same extent as if he were in a DPW cell or equivalent.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Because of the serious issues raised by plaintiff's motion, the undersigned exercises his authority under Local Rule 304(b) and Rule 6(c) of the Federal Rules of Civil Procedure to shorten the period for submitting written objections to these findings and recommendations to seven (7) days.  Within seven (7) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 31, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE